# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILFORED GHOLSON and KATRINA REESE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 07 C 3694 |
| | ) ) | |
| OFFICER MARK LEWIS, et al. | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment in its entirety.

## BACKGROUND

Plaintiffs allege that on April 23, 2006, Plaintiff Wilfored Gholson ("Gholson") was inside of his apartment when police officers employed by Defendant Village of Riverdale ("Riverdale") gestured through his window for him to come outside. Plaintiffs claim that Gholson complied and when he stepped

1

outside he was immediately surrounded by several police officers including Defendant Officer Mark Lewis ("Officer Lewis"). Plaintiffs allege that the officers, including Officer Lewis, began to push Gholson back and forth. According to Plaintiffs, Gholson responded by sitting down on the pavement to avoid further contact with the officers. Plaintiffs allege that the officers then instructed him to return to his apartment, which he did.

Plaintiffs claim that a short time after Gholson returned to his apartment another officer knocked on his door and Plaintiff Katrina Reese ("Reese"), who also resided in the apartment with Gholson, answered the door. Plaintiffs allege that officers then entered the apartment, put handcuffs on Gholson, and placed him under arrest. Plaintiffs claim that Gholson was taken to the police station, processed and detained before being released on bond. Plaintiffs claim that Defendant Officer Frank Nowaski ("Officer Nowaski") drafted a complaint against Gholson falsely alleging that Gholson committed a battery against Officer Lewis. Plaintiffs claim that Gholson was prosecuted on the charge of battery and that the charge was resolved in Gholson's favor.

Plaintiffs initially brought an action in 2006 against Defendants, which was dismissed without prejudice for want of prosecution. Plaintiffs then refiled the instant action in the Circuit Court of Cook County, Illinois. Gholson brings a claim alleging false arrest and excessive force in violation of 42 U.S.C. § 1983 ("Section 1983") against Officer Lewis, Officer Nowaski, and Defendant Officer David Demik ("Officer Demik") (collectively referred to as "Defendant Officers") (Count I) and a

claim alleging false arrest and malicious prosecution in violation of Illinois state law against the Defendant Officers (Count II). Gholson and Reese also bring a Section 1983 claim for warrantless entry into their apartment in violation of the Fourth Amendment against the Defendant Officers (Count III). Finally, Gholson brings a Section 1983 *Monell* claim against Riverdale (Count IV). Defendants removed the instant action to federal court. On April 29, 2008, we denied Defendants' motion to dismiss. Defendants answered Plaintiffs' complaint and raised affirmative Defenses. Defendants now move for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set

forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Section 1983 False Arrest and Excessive Force Claims (Count I)

Gholson brings claims under Section 1983, alleging that Defendants violated his constitutional rights when they falsely arrested him and used excessive force in arresting him. Defendants move for summary judgment on these claims arguing (1) that the undisputed facts establish that Officer Lewis had reasonable grounds to believe that Gholson committed the offense of battery, (2) that the undisputed facts establish that Officer Nowaski and Officer Demik were not the arresting officers and cannot be held liable for false arrest, (3) that the undisputed facts establish that none

of the officers used excessive force against Gholson, and (4) that Officer Lewis,
Officer Nowaski, and Officer Demik are entitled to qualified immunity on Gholson's
Section 1983 claims.


A. Section 1983 False Arrest Claim

Gholson's Section 1983 false arrest claim names all of the Defendant Officers.
As an initial matter, the undisputed facts establish that Officer Nowaski and Officer
Demik did not arrest Gholson, did not place Gholson into custody, and did not sign a
criminal complaint against Gholson. (RSF Par. 3-8). Thus, there is no evidence that
Officer Nowaski and Officer Demik participated in any fashion in Gholson's arrest
and they cannot be liable for Gholson's Section 1983 false arrest claim. *See Jenkins
v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998)(stating that "'an individual cannot be
held liable in a § 1983 action unless he caused or participated in an alleged
constitutional violation'" and finding that an officer who did not arrest the plaintiff
could not be liable for false arrest)(quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869
(7th Cir. 1983)(emphasis omitted)). The undisputed facts establish that Officer
Lewis was the arresting officer who signed the criminal complaint against Gholson
for misdemeanor battery to a police officer. (RSF Par. 1-2). Defendants argue that
Officer Lewis is also entitled to summary judgment since the undisputed facts
establish that Officer Lewis had probable cause to arrest Gholson and even if Officer
Lewis did not have probable cause to arrest Gholson, he is entitled to qualified

immunity on Gholson's Section 1983 false arrest claim.

### 1. Probable Cause

A showing of probable cause is "an absolute defense" to a Section 1983 false arrest claim. *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). An officer is considered to have acted with probable cause "'if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 686 (quoting *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007)(internal quotation marks omitted)). When evaluating whether probable cause existed, the courts do not view the facts "'as an omniscient observer would perceive them' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)(quoting in part *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Probable cause may be determined as a matter of law, but "'[i]f there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them'" a jury must decide whether there was probable cause. *Chelios*, 520 F.3d at 686 (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)).

Plaintiffs argue that the witnesses to the incident have offered differing accounts of the precise events that transpired on the night in question and that such

inconsistencies raise a genuine issue of material fact as to whether Officer Lewis had probable cause to arrest Gholson for battery. (Ans. 1-2). However, Plaintiffs overstate the extent of the discrepancies between the respective versions of the facts. The parties do not dispute the fact that, on the night in question, Officer Lewis and other officers responded to a dispatch call suggesting that someone residing at Gholson's apartment building was engaging in drug activity and may have been armed. (RSF Par. 28). The parties agree that Gholson exited the apartment building and stood on the front stoop. (RSF Par. 29). Gholson does not dispute the fact that Officer Nowaski attempted to perform a precautionary "pat down" search of Gholson's body. (RSF Par. 34). Gholson also does not dispute the fact that at the time that Officer Nowaski was attempting to perform a pat down search of Gholson, Officer Lewis was standing between Gholson and the door to the apartment building. (RSF Par. 34).

It is at this point where the parties offer slightly differing accounts of the precise facts that transpired. Defendants point to the testimony of Officer Lewis who testified that Gholson suddenly came toward Officer Lewis in an aggressive manner and made contact with Officer Lewis' chest. (SF Par. 11). Officer Lewis testified that he instinctively pushed Gholson off of him causing Gholson to step past Officer Nowaski into a third officer. (Lewis Dep. 38-39). Two other officers corroborated Officer Lewis' testimony. (SF Par. 13). Gholson, however, testified that he never intentionally made contact with any officer but rather he was pushed from behind by

an officer he could not identify. (SAF Par. 27); (Gholson Dep. 101). Gholson testified that it was this push that caused him to make contact with a second officer he cannot identify. (SAF Par. 27); (Gholson Dep. 102). Gholson further testified that the officer that he was pushed into yelled "get the [expletive] off me" and pushed Gholson toward a third officer. (SAF Par. 28); (Gholson Dep. 103-04). Gholson testified that at this point he voluntarily sat down on the pavement. (SAF Par. 29); (Gholson Dep. 106-07). According to Gholson, Reese then came outside and, after a brief discussion, Gholson was allowed to return with Reese into the apartment. (SAF Par. 30). Gholson testified that while he was walking with Reese back into the apartment he made no contact with any officer and Reese also testified that there was no contact between Gholson and any of the officers as they were walking back into the apartment. (SAF Par. 31).

Defendants argue that even if we construe all of the facts and draw all inferences in Gholson's favor, the facts establish that Officer Lewis did have probable cause to arrest Gholson for battery. Under Illinois law, a battery is defined as "intentional or knowing 'physical contact of an insulting or provoking nature' without legal justification." *Chelios*, 520 F.3d at 678 (quoting in part 720 ILCS 5/12-3). Plaintiffs argue that Gholson's testimonial evidence suggests that he never made any contact with Officer Lewis and, thus, Defendants cannot establish that Officer Lewis had probable cause to believe that Gholson committed battery. (Ans. 2). However, in asserting that Gholson made no contact with Officer Lewis,

Plaintiffs point to the testimony of Gholson and Reese that Gholson did not make contact with Officer Lewis *while returning to the apartment* after Reese had come outside. (RSF Par. 36); (SAF Par. 16); (SAF Par. 31). Gholson has not offered evidence that would indicate that he *never* made contact with Officer Lewis before returning to the apartment. In fact, Gholson testified that he made contact with several of the officers when he was allegedly pushed by an unknown officer. (RSF Par. 39); (SAF Par. 27-28). Thus, even in construing the facts in a light most favorable to Plaintiffs, we cannot find that Gholson never made physical contact with Officer Lewis. We can, however, draw inferences in Gholson's favor that when he struck Officer Lewis, it was not intentional but rather the result of being pushed by an unknown officer.

Even if we find that the contact made between Gholson and Officer Lewis was not intentional on Gholson's part, as Gholson testified, the undisputed record establishes that Officer Lewis had probable cause to arrest Gholson for battery. As indicated above, probable cause is a practical analysis and the "arresting officer's subjective knowledge of the facts sufficient to constitute probable cause is central to the evaluation of the propriety of an arrest. . . .'" *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 426 (2000)(quoting *Richardson v. Bonds*, 860 F.2d 1427, 1430-31 (7th Cir. 1988)(emphasis omitted)). Officer Lewis testified that he was only an arm's length away from Gholson while Gholson was being patted down and that, from his perspective, Gholson suddenly came towards him, bumping him in the chest. (Lewis

Dep. 34). Even though Gholson indicates that he was actually pushed by an unknown officer, Gholson has not offered any evidence that would raise a genuine issue of fact as to Officer Lewis' belief that Gholson intentionally struck him. Gholson's testimony actually supports Officer Lewis' account in the respect that Gholson testified that the officer he was pushed into responded by saying "get the [expletive] off me." (SAF Par. 28); (Gholson Dep. 103-04). Even if a retrospective review of the facts reveals that Gholson did not, in fact, intentionally bump into Officer Lewis, the reasonable belief by Officer Lewis that Gholson did so is not a fact that is in dispute. *See United State v. Watts*, 535 F.3d 650, 655 (7th Cir. 2008)(stating that "[p]robable cause means 'a probability or substantial chance,' not absolute certainty")(quoting in part *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)). The undisputed record establishes that Officer Lewis reasonably believed that Gholson touched him in an offensive manner and, as such, had probable cause to arrest Gholson for battery.

2. Qualified Immunity

Defendants also argue that Officer Lewis and any other officer involved in Gholson's arrest are entitled to qualified immunity with respect to the Section 1983 false arrest claim. Qualified immunity protects officers from civil liability when "their conduct does not violate a *clearly established* statutory or constitutional right that a reasonable person would know about." *Mustafa v. City of Chicago*, 442 F.3d

544, 548 (7th Cir. 2006)(emphasis in original). Defendants argue that, based on the evidence in the record, the conduct of the officers who participated in the arrest could not be seen as a clear violation of Gholson's constitutional rights. As we indicated above, even if Officer Lewis was ultimately erroneous in his belief that Gholson committed a battery against him, there is clear evidence in the record indicating that Officer Lewis had a reasonable belief that Gholson had intentionally bumped into him. Thus, based on the record, no reasonable trier of fact could conclude that Officer Lewis, and the other officers on the scene violated a "clearly established" right of which a reasonable person would be aware. *Id.* (emphasis omitted). Therefore, Defendants are entitled to summary judgment on Gholson's Section 1983 false arrest claim.

### B. Section 1983 Excessive Force Claim

Gholson also alleges in Count I that Defendants violated his Fourth and Fourteenth Amendment rights by using excessive force in arresting him. As with his Section 1983 false arrest claim, Gholson includes all of the Defendant Officers in his Section 1983 excessive force claim. There is insufficient evidence in the record to indicate that Officer Nowaski and Officer Demik participated in any of the physical actions against Gholson. In Defendants' statement of facts, submitted pursuant to Local Rule 56.1, Defendants have put forth evidence that Officer Nowaski never had any physical contact with Gholson except for his attempt to perform a pat down

search and Officer Demik never had any physical contact with Gholson other than possibly bumping into Gholson's back. (SF Par. 61, 64). Plaintiffs have not properly denied these statements and assert unfounded objections to relevancy. (RSF Par. 61, 64). Plaintiffs merely put forth evidence indicating that Officer Demik and Officer Nowaski were present at the scene. (RSF Par. 61, 64). At this stage in the litigation Gholson must support his claims with evidence and "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)(describing summary judgment as the "put up or shut up" moment in the lawsuit). Since Gholson has not set forth any facts to raise a genuine issue of material fact as to whether Officer Nowaski and Officer Demik used force against him, they are entitled to summary judgment on Gholson's Section 1983 excessive force claims as well.

In contrast to Officer Demik and Officer Nowaski, Officer Lewis admits to pushing Gholson. (SF Par. 36). However, Defendants argue that Officer Lewis' actions did not constitute excessive force since physical intrusion to Gholson was minuscule and since Officer Lewis had reason to believe that Gholson was approaching him in a confrontational manner. (Mot. SJ Mem. 12-13). The Seventh Circuit has stated that "[t]he force used to effect an arrest must be objectively 'reasonable' under the fourth amendment." *Chelios*, 520 F.3d at 689. In evaluating whether or not excessive force has been applied "the courts must engage in a 'careful balanc[ing] of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake.'"
*Id.* (quoting in part *Morfin v. City of E. Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003)). The Supreme Court has cautioned courts to take into consideration the fact that "'police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Construing all facts in a light favorable to Gholson, the record indicates that Gholson was pushed a couple times by officers. Plaintiffs' Local Rule 56.1 statement of facts actually asserts that Gholson was only pushed twice by officers and that he voluntarily sat on the ground before making contact with the third officer. (SAF Par. 27-29). Defendants' Local Rule 56.1 statement of facts asserts that Gholson was pushed three times. (SF Par. 38-43). Whether Gholson was pushed twice or he was pushed three times, it is clear that after each push Gholson's body move at most a couple of feet, he never lost his balance, and never fell to the ground except for his voluntary act of sitting on the ground. (RSF Par. 38-43). Defendants have put forth evidence indicating that Gholson was not in any way physically injured as a result of these pushes, he never requested any medical attention, and he was never treated medically for anything in relation to the incident. (SF Par. 71). Plaintiffs have not contested the fact that Gholson sustained no physical injuries and argue only that Gholson decided to break his apartment lease as a result of the

incident. (RSF Par. 71). The only other physical contact that Plaintiffs allege occurred between officers and Gholson was the contact made when Gholson was placed into handcuffs in his apartment. (SAF Par. 34). Plaintiffs assert that an officer put Gholson's arm behind his back and placed him in handcuffs on his couch. (SAF Par. 34). There is no evidence in the record indicating that any of the named Defendants were involved in placing Gholson into handcuffs.

The record reflects that the scene encountered by the officers was chaotic and uncertain, yet the physical contact with Gholson was quite minimal. It is undisputed that the officers were responding to a dispatch call which indicated the possibility of drug use on the same floor and the same building where Gholson resided. (RSF Par. 28). The undisputed facts also establish that the dispatch call indicated to the officers that there was a report of possible weapons possessed by a subject in that building. (RSF Par. 28). Gholson admits that he was present at the location which was the subject of the dispatch call and he was informed by the officers that they had received reports of drug activity and possible presence of weapons. (RSF Par. 29-30). Gholson asserts that it was around this time that the officers began to push him. (SAF Par. 27). Gholson admits that he does not know which officer initially pushed him and has not offered any evidence to even raise an inference that it was one of the named Defendants in this case. (RSF Par. 39). Furthermore, Gholson's own account of the events indicates that the second officer whom he was pushed into pushed back reflexively and stated "get the [expletive] off me." (SAF Par. 28). Finally, according

to Gholson's Local Rule 56.1 statement of additional facts, he was not pushed by a third officer, and made no contact with a third officer at that time. (SAF Par. 29). Based on the minimal amount of physical contact with Gholson and the undisputed potential danger that the officers faced at the time, no reasonable trier of fact could conclude that any of the named Defendants used an excessive amount of force on Gholson. Even though Officer Lewis admits that he was one of the officers who pushed Gholson, he testified that he did so upon belief that Gholson was approaching him aggressively. (SF Par. 36); *Graham*, 490 U.S. at 396 (stating that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment")(quoting in part *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)(internal citation omitted)). Furthermore, there is no evidence that Officer Demik and Officer Nowaski even pushed Gholson at all. (RSF Par. 61, 64).

Finally, the Defendant Officers are also entitled to qualified immunity with respect to Gholson's Section 1983 Excessive Force claim. Based on the record, there is no evidence that the Defendant Officers were reasonably aware that they were violating Gholson's "clearly established" rights by pushing him back in a manner inflicting no physical injury and in an effort to perform a precautionary pat down search to ensure officer safety. *Mustafa*, 442 F.3d at 548 (emphasis omitted). Therefore, Defendants are entitled to summary judgment on Gholson's Section 1983 excessive force claims.

## II. Fourth Amendment Section 1983 Claim (Count III)

In Count III of Plaintiffs' complaint, Gholson and Reese assert that the
Defendant Officers violated their constitutional rights when the Defendant Officers
entered Plaintiffs' apartment without a warrant and without consent. (Compl. Par.
24). Although not specifically stated in Plaintiffs' complaint, we will construe the
claim in Count III as one brought under Section 1983 since Plaintiffs are seeking
damages for violations of their constitutional rights. (Compl. Par. 25). Plaintiffs'
warrantless entry claim fails at the outset since there is no evidence in the record that
indicates that any of the Defendant Officers ever entered Plaintiffs' apartment.
Plaintiffs do not dispute that the two officers who followed Gholson into his
apartment and placed Gholson in handcuffs were two other officers who are not
named Defendants in the instant action. (RSF Par. 50-52). Since there is no
evidence that any of the named Defendant Officers entered Plaintiffs' apartment
without a warrant, Defendants are entitled to summary judgment on the Section 1983
Fourth Amendment claim.

## III. *Monell* Claim (Count IV)

Defendants argue that Riverdale is entitled to summary judgment on the
*Monell* claim since Plaintiffs have not shown that there was a violation of Gholson's
constitutional rights, since Plaintiffs have not shown that there was a policy put in

place by Riverdale reflecting a deliberate indifference to the risk of a constitutional violation, and since Plaintiffs have not put forth evidence to show a causal link between any policy of Riverdale and the actions taken against Gholson.  For a Section 1983 *Monell* claim, a plaintiff must establish: "(1) an express policy that, when enforced, causes a constitutional deprivation; or (2) that the constitutional injury was caused by a person with final policymaking authority."  *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008); *see also Campbell v. Miller*, 499 F.3d 711, 720 (7th Cir. 2007)(stating that for a *Monell* claim a plaintiff must show that the misconduct resulted from "'(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority'")(quoting *Latuszkin v. City of* Chicago, 250 F.3d 502, 504 (7th Cir. 2001)).  The Seventh Circuit has also stated that a *Monell* claim may be brought based on inadequate training or supervision by showing "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by officers."  *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029-30 (7th Cir. 2006).

As an initial manner, we have already ruled as a matter of law, that the evidence in the record does not support a finding that Gholson's constitutional rights were violated by the Defendant Officers.  Without an underlying constitutional violation, Gholson cannot support his *Monell* claim.  *Montano*, 535 F.3d at 570

(stating that a *Monell* claim requires that a constitutional violation was caused by a municipal policy). Furthermore, in Plaintiffs' Local Rule 56.1 statement of additional facts, Plaintiffs have not included a single fact referencing a policy on the part of Riverdale that could form a factual basis for Gholson's *Monell* claim. There is no evidence in the record relating to any municipal policy, custom, widespread practice, or failure to train. In Plaintiffs' complaint, they allege that a "failure by the Village of Riverdale to investigate plaintiff's written complaint" is "evidence [of] a Village of Riverdale custom and policy of condoning civil rights violations." (Compl. Par. 29). However, there is no such evidence of such a failure by Riverdale in the record on summary judgment. *See* Fed. R. Civ. P. 56(e)(stating that at summary judgment, plaintiffs must "set forth specific facts showing that there is a genuine issue for trial"); *see also Johnson*, 325 F.3d at 901 (describing summary judgment as the "put up or shut up" moment in the lawsuit). In fact, Plaintiffs admit in their Local Rule 56.1 statement of additional facts that the Chief of Police for Riverdale contacted Gholson to discuss a complaint that Gholson had filed. (SAF Par. 39). Plaintiffs state that the Chief of Police indicated that he wished to meet with Gholson to discuss Gholson's complaint, however Gholson "was not inclined" to meet with the Chief of Police. (SAF Par. 39). Therefore, based on the entirety of the evidence in the record, we grant Defendants' motion for summary judgment on the *Monell* claim.

<u>IV. State Law Claims (Count II)</u>

In Count II of Plaintiffs' complaint, Gholson brings claims alleging false arrest and malicious prosecution in violation of Illinois state law against all of the Defendant Officers.  In light of the fact that we have dismissed the federal claims in the instant action, we must determine whether the court should exercise supplemental jurisdiction over the remaining state claims.  Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims.  *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts).  The Seventh Circuit has stated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction" and that a court should retain jurisdiction where a statute of limitations would bar future suits, where "substantial federal judicial resources have already been expended on the resolution of the supplemental claims," and  "where it is obvious how the claims should be decided." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-907 (7th Cir. 2007). The Seventh Circuit has stated that "in exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources." *Timm v. Mead Corp.*, 32 F.3d 273, 276 (7th Cir. 1994).  We further note that with respect to Plaintiffs' state law claims there are disputes between the parties

regarding applicable Illinois legal precedent and arguments relating to dicta in certain decisions by Illinois courts.  We have considered all of the pertinent factors and, as a matter of discretion, we decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  Therefore, we remand the remaining state law claims to the state court.


## V. Unknown Police Officers

Plaintiffs have named as Defendants in their complaint "Unknown Police Officers."  (Compl. 1).  Since, at this stage in the litigation, Plaintiffs have failed to name or identify any of these unidentified officers, we dismiss the instant action as it relates to the unknown police officers not specifically named in the complaint.  *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007)(finding that where a plaintiff fails to identify and serve a defendant after the close of discovery, the district court should dismiss the unnamed defendant from the case).

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment on the federal claims. We decline to exercise supplemental jurisdiction over the remaining state law claims and we remand the instant action to state court. We also dismiss the instant action before this court as it relates to the unknown police officers who are not specifically named in the complaint.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   November 19, 2008